IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

No. 24-4639

_____

UNITED STATES OF AMERICA,

*Appellee,*

v.

JORGE ROMERO GONZALEZ,

*Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Virginia
at Alexandria
*The Honorable Claude M. Hilton*

_____

BRIEF OF THE UNITED STATES

_____

Erik S. Siebert
United States Attorney

James Reed Sawyers
Kristin S. Starr
Assistant United States Attorneys
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

*Attorneys for the United States of America*

# Table of Contents

**Page**

Table of Authorities ................................................................. iii

Introduction ........................................................................1

Issue Presented ....................................................................2

Statement of the Case ...........................................................2

    A.    A witness reports "screaming" and "hitting" rocking a pickup
        truck back and forth.............................................................2

    B.    Officers locate the truck and question Romero Gonzalez....................4

    C.    Officers arrest Romero Gonzalez for driving drunk after he fails
        field sobriety tests..............................................................5

    D.    The court denies Romero Gonzalez's motion to suppress, finds
        him guilty, and imposes a year's probation. .........................7

Summary of Argument ...........................................................8

Argument............................................................................10

    The court did not err in finding that the officers reasonably suspected
    Romero Gonzalez of assault. ..........................................12

    A.    The witness's report of screaming and violent strikes
        established reasonable suspicion of an assault...................12

    B.    The witness's report of a male perpetrator and Romero
        Gonzalez's presence in the truck established reasonable
        suspicion he was the perpetrator. ........................18

Conclusion ........................................................................26

Statement Regarding Oral Argument ....................................27

Certificate of Compliance ...........................................................................27

# Table of Authorities

## Cases

*Griffin v. Wisconsin*, 483 U.S. 868 (1987)................................................................14

*Illinois v. Wardlow*, 528 U.S. 119 (2000)................................................ 2, 14, 16, 19

*Kansas v. Glover*, 589 U.S. 376 (2020) ........................................................... passim

*Navarette v. California*, 572 U.S. 393 (2014) ................................................ passim

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)................................................................25

*Terry v. Ohio*, 392 U.S. 1 (1968) ............................................................... 10, 25

*Torres v. Ball*, No. 21-6447, 2023 WL 2966035 (4th Cir. Apr. 17, 2023) (per curiam) ........................................................ 13, 14, 18, 21

*United States v. Beeson*, 611 F. App'x 773 (4th Cir. 2015) (per curiam) ................................................................15

*United States v. Brown*, 114 F.4th 253 (4th Cir. 2024) ...........................................11

*United States v. Bumpers*, 705 F.3d 168 (4th Cir. 2013)........................................25

*United States v. Cortez*, 449 U.S. 411 (1981)................................................... 11, 14

*United States v. Drakeford*, 992 F.3d 255 (4th Cir. 2021) .....................................22

*United States v. Glover*, 662 F.3d 694 (4th Cir. 2011)............................................25

*United States v. Gondres-Medrano*, 3 F.4th 708 (4th Cir. 2021) ...........................17

*United States v. Gordon*, No. 22-4282, 2023 WL 2446674 (4th Cir. Mar. 10, 2023) (per curiam) ..............................................................20

*United States v. Griffin*, 589 F.3d 148 (4th Cir. 2009) ..........................................12

*United States v. Grogins*, 163 F.3d 795 (4th Cir. 1998)........................................11

*United States v. Han*, 74 F.3d 537 (4th Cir. 1996) ................................................10

*United States v. Hensley*, 469 U.S. 221 (1985) .....................................................11

*United States v. Hernandez-Mendez*, 626 F.3d 203 (4th Cir. 2010)......................20

*United States v. Holmes*, 376 F.3d 270 (4th Cir. 2004).........................................20

*United States v. Kehoe*, 893 F.3d 232 (4th Cir. 2018).................................... 12, 13

*United States v. Massenburg*, 654 F.3d 480 (4th Cir. 2011) .................................21

*United States v. McCoy*, 513 F.3d 405 (4th Cir. 2008) ...........................................17

*United States v. Midgette*, 478 F.3d 616 (4th Cir. 2007)...........................................14

*United States v. Perkins*, 363 F.3d 317 (4th Cir. 2004)................................. passim

*United States v. Phillips*, 175 F.3d 1017, 1999 WL 155941 (4th Cir. 1999) (per curiam) ................................................................. 20, 21

*United States v. Sakyi*, 160 F.3d 164 (4th Cir. 1998) ...........................................20

*United States v. Singh*, 363 F.3d 347 (4th Cir. 2004)...........................................14

*Whatley v. Scobie*, No. 3:06-cv-628, 2007 WL 9735597 (D.S.C. June 14, 2007) ...............................................................................21

## Statutes

18 U.S.C. § 3607 ...........................................................................................8

21 U.S.C. § 844(a) .......................................................................................7

Va. Code Ann. § 46.2-301 ...........................................................................7

## Regulations

36 C.F.R. § 4.2 ...........................................................................................7

36 C.F.R. § 4.14(b) .....................................................................................7

36 C.F.R. § 4.23(a)(1) .................................................................................7

36 C.F.R. § 4.23(a)(2) .................................................................................7

# Introduction

On the evening of February 20, 2024, a witness called 911 to report screaming and a man hitting inside a pickup truck parked off the George Washington Memorial Parkway ("Parkway"). While the witness could not be sure the blows were striking a person, they were so violent the truck was jerking back and forth. The witness provided her first name and phone number, as well as the license plate number, make, and color of the truck. United States Park Police officers responded and, approximately half an hour after the report, located the truck in a different lot off the Parkway. The officers pulled in behind the still-running truck and questioned the man seated in the driver's seat—Jorge Romero Gonzalez. The questioning did not reveal evidence he committed an assault but, after he displayed signs of intoxication and failed field sobriety tests, the officers arrested him for driving under the influence.

Romero Gonzalez moved to suppress, contending that the officers lacked reasonable suspicion he had committed an assault when they pulled in behind him. The magistrate judge denied the motion, finding that the witness's report and Romero Gonzalez's presence in the truck the witness reported seeing established reasonable suspicion. The magistrate judge then found Romero Gonzalez guilty at a bench trial and imposed a year's probation along with a few hours in jail. The district court adopted the magistrate judge's reasoning and affirmed the denial of

the suppression motion.

The court did not err in finding that the officers reasonably suspected Romero Gonzalez of assault. Reasonable suspicion, after all, requires only *suspicion*, not certainty. A credible report of screaming and blows so vicious they quaked a truck back and forth certainly raised a reasonable suspicion of assault— even if it did not definitively establish an assault was occurring. Likewise, the witness's report that the perpetrator was male and Romero Gonzalez's presence in the truck raised suspicion he was the perpetrator—even if it did not confirm it. Romero Gonzalez offers innocent explanations for the witness's report (perhaps the perpetrator was striking a seat rather than a person) and his presence in truck (perhaps he was merely a bystander, rather than the perpetrator). But he cannot overcome the reality that officers are entitled to conduct stops based on conduct that is "ambiguous and susceptible of an innocent explanation" precisely "to resolve the ambiguity." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000).

## Issue Presented

Whether the court erred in finding that the officers possessed reasonable suspicion Romero Gonzalez had committed an assault.

## Statement of the Case

### A.   A witness reports "screaming" and "hitting" rocking a pickup truck back and forth.

On the evening of February 20, 2024, a witness called 911 to report

"screaming," "pounding," and "hitting" inside a Dodge pickup truck parked in a lot off the George Washington Memorial Parkway near Waynewood Boulevard. Def's Sealed Ex. A at 0:12–0:56. Due to the darkness of night and the truck's tinted windows, the witness could not be sure if the blows were striking a "person." *Id.* at 0:40–0:46; *see also* Gov's Sealed Ex. A at 4:49–5:00. But, she emphasized, there were "people in the front" of the truck as well as "someone in the back" hitting "so hard" that the strikes were "jerking the car back and forth." Def's Sealed Ex. A at 0:33–0:49. The witness further reported that she had been "parked next to the" truck, *id.* at 0:21–0:24, and that when she turned on her vehicle's lights, the blows "immediately . . . stopped" and the perpetrator "started looking at" her, *id.* at 0:49–0:56. The witness, who had just left the scene when she made the 911 call, provided the truck's Virginia license plate number and its color—"gray" or possibly "dark blue"—as well as her first name and phone number. Gov's Sealed Ex. A. at 0:54–2:18.

Recognizing that the witness had reported a possible "assault in progress," a United States Park Police dispatcher sent officers to the Waynewood lot. Gov's Sealed Ex. A. at 0:38–0:45; *see also* Def's Sealed Ex. B at 0:00–0:27. While the officers raced to the scene, the dispatcher called the witness back to gather additional details. Gov's Sealed Ex. A at 4:34–4:42. The witness indicated that the perpetrator was a "passenger" and a "he." *Id.* at 4:42–4:45. Again, the witness

3

could not be sure whether "he was hitting the person or the seat," but emphasized that the hitting was "really hard," the "car was jerking," and she could hear "yelling" and "screaming." *Id.* at 4:45–5:05. Given the situation's exigency, the dispatcher requested that Fairfax County officers stationed "closer" to the scene also respond. *Id.* at 8:10–8:33; *see also* Def's Sealed Ex. B at 3:26–3:28.

### B. Officers locate the truck and question Romero Gonzalez.

Park Police officers responded to the Waynewood lot but did not see a truck matching the witness's description. JA83–84; *see* Def's Sealed Ex. B at 4:14–5:00. The officers expanded their search and, approximately half an hour after the 911 call, found the truck parked (but still running) in a different lot along the Parkway near River Farm Drive. JA84–85, JA108, JA121, JA126–127; *see* Def's Sealed Ex. B at 5:00–6:08. The officers had previously searched that lot, indicating the truck had only recently arrived there. *See* JA84, JA127. After confirming that the truck's make, color, license plate number, and state of registration matched the description provided by the witness, the officers pulled their vehicles in behind it. *See* JA84–85, JA89–90; Gov's Ex. 14 at 0:30–0:37.

The officers could see a man in the driver's seat but, due to the height of the truck and the darkness of night, did not know whether a victim was present but unconscious or restrained "in the back of the vehicle." *See* JA128; Gov's Ex. 14 at 0:30–0:40. Upon approaching, the officers requested Romero Gonzalez's driver's

4

license and asked whether there was "anybody else in the car," which he denied. JA89–90, JA108–109; *see* Gov's Ex. 14 at 0:40–0:58. Officers shone their flashlights into the truck's back window and bed "looking for" a victim. *See* JA128; Gov's Ex. 14 at 0:48–1:12; Def's Sealed Ex. C at 0:37–0:49. The officers also asked each other whether anybody else was in the truck. Gov's Ex. 14 at 0:52–0:56, 1:12–1:16; Def's Sealed Ex. C at 0:31–0:35, 0:49–0:53.

Once the officers confirmed the absence of a victim, they began questioning Romero Gonzalez regarding the assault. *See* Gov's Ex. 14 at 1:27–1:30. Initially, he refused to acknowledge having been parked with his girlfriend at the Waynewood lot. JA70; *see* Gov's Ex. 14 at 1:30–3:00. Eventually, he admitted to having driven her home after they "got in a little discussion." *See* Gov's Ex. 14 at 3:00–5:00; JA96. The officers also examined Romero Gonzalez's knuckles but saw no evidence of bruising. JA121–122; *see* Gov's Ex. 14 at 5:00–5:12. After eliciting his girlfriend's name and phone number, Gov's Ex. 14 at 3:44–4:30, two officers traveled to her home to perform a welfare check, JA96; *see* Def's Sealed Ex. B at 6:10–6:43, 7:50–8:00. She stated that there had been no fight and that she was not injured. *See* Def's Sealed Ex. B at 8:52–9:00.

### C. Officers arrest Romero Gonzalez for driving drunk after he fails field sobriety tests.

From "[w]hen" the officers "first started talking to" Romero Gonzalez, he appeared "dazed," his "eyes were glazed over" and "bloodshot," he was "slurring"

his words "a little bit," and he and the truck reeked of alcohol. *See, e.g.*, JA90, JA121, JA128. An officer also ran his driver's license and learned that it had been suspended. JA91, JA95. Consequently, after concluding their questioning regarding the assault, the officers turned to investigating Romero Gonzalez's intoxication. *See* JA121–122; Gov's Ex. 14 at 5:12–5:20. The officers directed him to exit the truck and he acknowledged drinking beer an hour-and-a-half before. JA97, JA109, JA122; *see* Gov's Ex. 14 at 5:20–6:10.

While officers began field sobriety tests, another searched the truck. JA101–102; *see, e.g.*, Gov's Ex. 14 at 6:10–6:32. The search revealed open bottles of Mickey's malt liquor, two mostly empty bottles of vodka, a "knife" covered in a "white, powdery substance" that appeared to be "cocaine," and a plastic baggy containing a similar "powdery, white substance." JA129–132.

Romero Gonzalez failed the field sobriety tests, leading officers to place him under arrest. JA97–101, JA110–115; *see* Gov's Ex. 14 at 6:40–19:40. While conducting a search incident to arrest, an officer found a second baggy containing white powder in Romero Gonzalez's pants pocket. JA102, JA115–116, JA132; *see* Gov's Ex. 14 at 18:45–19:20. When questioned about the baggy, he admitted it was cocaine. JA116–117, JA132; *see* Gov's Ex. 14 at 19:20–19:50. The officers transported him to a Park Police station, where breath testing measured his blood alcohol content as .169% and .181%—more than twice the legal limit. JA102–

103, JA154.

### D. The court denies Romero Gonzalez's motion to suppress, finds him guilty, and imposes a year's probation.

The government filed an information charging Romero Gonzalez with (1) simple possession of cocaine, 21 U.S.C. § 844(a); (2) driving under the influence, 36 C.F.R. § 4.23(a)(1); (3) driving while intoxicated, *id.* § 4.23(a)(2); (4) having an open container of alcohol in a vehicle, *id.* § 4.14(b); and (5) driving with a suspended license, *id.* § 4.2, adopting Va. Code Ann. § 46.2-301. JA6–11. He moved to suppress, claiming that he was seized when the officers pulled behind his truck and that they lacked reasonable suspicion he had committed an assault. JA12–23.

At a hearing on the motion to suppress, the government conceded that a seizure "did occur pretty much from the beginning." JA64. The magistrate judge denied the motion, finding that the witness's report "was sufficient to establish reasonable, articulable suspicion that criminal activity was afoot." JA68. It further concluded that Romero Gonzalez's presence in the car "justif[ied] a temporary, limited detention . . . to investigate the information that the 911 caller had provided." JA69. The court emphasized that the officers' actions were "reasonable" and "appropriate" to "determine whether or not there was a victim of the assault, and, potentially, whether or not there was somebody who needed police or medical assistance." JA69. Indeed, the "officers did" exactly "what they were

supposed to do." JA69.

The court then held a bench trial and found Romero Gonzalez guilty of possessing cocaine, driving while intoxicated, and having an open container of alcohol. JA141–142. It dismissed the driving under the influence count as duplicative and, after excluding the government's license-suspension records as hearsay, found Romero Gonzalez not guilty of driving on a suspended license. JA95, JA135–136, JA142.

The court proceeded to sentencing and remanded Romero Gonzalez to custody until 3:00 PM that afternoon. JA147–149. The court also imposed a one-year term of probation as well as fines and special assessments totaling $320. JA147–148, JA183. Pursuant to 18 U.S.C. § 3607, the court declined to enter judgment on the possession of cocaine count, explaining that it would dismiss the charge if Romero Gonzalez successfully completed probation. JA147. Since beginning probation, Romero Gonzalez has repeatedly violated its terms by testing positive for cocaine. *See* JA4–5 (ECF Nos. 29, 35–38).

Romero Gonzalez appealed the denial of his suppression motion to the district court and, after hearing argument, it adopted the reasoning of the magistrate judge and affirmed. JA235–249; JA250 (order). This appeal followed.

## Summary of Argument

The district court did not err in finding that the officers reasonably suspected

Romero Gonzalez of assault. The witness reported screaming and violent blows by a male perpetrator jerking a truck back and forth. The hitting immediately stopped when the witness revealed her presence—suggesting consciousness of guilt. The witness also provided her first name and phone number as well as the make, color, state of registration, and license plate number of the truck. Half an hour later, consistent with a perpetrator's incentive to flee the scene after discovery, the officers found the truck parked in another lot off the parkway. In the driver's seat—apparently alone, but perhaps with an incapacitated or restrained victim in the back—was Romero Gonzalez. The court correctly found that "[t]hose facts" justified "a temporary, limited detention of Mr. Romero Gonzalez to investigate the information that the 911 caller had provided." JA69.

Reasonable suspicion is not a high bar. As Romero Gonzalez concedes, officers need not rule out the possibility of an innocent explanation. Rather, they may conduct stops based on ambiguous conduct to resolve the ambiguity. He offers no reason to doubt the credibility of the witness, who identified herself and provided the basis for her knowledge—contemporaneous, eye-witness observation. The officers also corroborated the tip when they found a truck precisely matching the witness's description in another lot off the Parkway. The credible, corroborated report of screaming and blows jerking a truck side to side more than sufficed for reasonable suspicion of an assault—regardless of the possibility the

perpetrator might only have been striking a car seat.

Further, when officers found Romero Gonzalez in the truck's driver's seat, they reasonably suspected he was the male perpetrator—regardless of the possibility he was merely a bystander. Moreover, even without particularized suspicion that Romero Gonzalez was the perpetrator, this Court's precedent on seizures of small groups permitted the officers to stop everyone in the truck regardless of how many remained. Accordingly, this Court should affirm.

## Argument

"When considering on appeal a motion to suppress evidence," this Court reviews "a district court's factual findings for clear error and its legal determinations de novo." *United States v. Perkins*, 363 F.3d 317, 320 (4th Cir. 2004). When, as here, "the district court denied the motion to suppress," this Court "construe[s] the evidence in the light most favorable to the government." *Id.* The Court can affirm a pretrial ruling on a motion to suppress based on evidence adduced at trial. *See United States v. Han*, 74 F.3d 537, 539 (4th Cir. 1996).

"Under *Terry v. Ohio*, 392 U.S. 1, 30 (1968), an officer may conduct a brief investigatory stop where the officer has reasonable suspicion that criminal activity may be afoot." *Perkins*, 363 F.3d at 321. Reasonable suspicion requires "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Kansas v. Glover*, 589 U.S. 376, 380 (2020). Courts, however,

"'cannot reasonably demand scientific certainty . . . where none exists.'" *Id.*
Rather, officers may "rely on probabilities" and "'commonsense judgments and
inferences about human behavior.'" *Id.* at 380–81, 385; *see, e.g.*, *United States v.
Cortez*, 449 U.S. 411, 418 (1981) ("The process does not deal with hard certainties,
but with probabilities."). At bottom, the reasonable suspicion standard "'is not
high,'" *United States v. Grogins*, 163 F.3d 795, 797 (4th Cir. 1998), and "'falls
considerably short' of 51% accuracy," *Glover*, 589 U.S. at 381.

The issue on appeal is narrow. The government does not contest that the
officers seized Romero Gonzalez when they pulled their cruisers behind his truck.
Romero Gonzalez, in turn, neither claims the officers improperly extended the stop
nor contests that the stop was permissible so long as the officers possessed
reasonable suspicion he "had committed or was committing" an assault. *See* Def.
Br. 21.[1] The court did not err in finding that the witness's report and Romero
Gonzalez's presence in the truck exceeded that low bar.

---

[1] Officers may conduct *Terry* stops based on reasonable suspicion of either a
"completed felony" or completed misdemeanor "involving a threat to public
safety." *United States v. Hensley*, 469 U.S. 221, 229 (1985). The report of a
potential assault so violent the blows caused a Dodge truck to jerk back and forth
certainly fits the bill—and Romero Gonzalez has forfeited any argument otherwise.
*See United States v. Brown*, 114 F.4th 253, 258 n.4 (4th Cir. 2024) (refusing to
address "unpreserved" contention that reasonable suspicion of "completed
misdemeanor" did not support "*Terry* stop").

**The court did not err in finding that the officers reasonably suspected Romero Gonzalez of assault.**

The record amply supports the district court's finding that the officers reasonably suspected Romero Gonzalez of assault. First, the witness's credible, corroborated report of screaming and hitting so violent as to rock a truck back and forth established reasonable suspicion of an assault. Second, the witness's report of a male perpetrator and Romero Gonzalez's presence in the truck provided reasonable suspicion he was the perpetrator.

### A. The witness's report of screaming and violent strikes established reasonable suspicion of an assault.

The witness's credible, corroborated report of brutal blows and screaming established reasonable suspicion of an assault. Start with the witness's credibility. For good reason, Romero Gonzalez does not contend that the officers had any reason to "question the informant's honesty or motivation." *United States v. Griffin*, 589 F.3d 148, 153 (4th Cir. 2009); *see, e.g.*, Def. Br. 22 (acknowledging "credibility of the tipster"). The witness "provided" her "first name and phone number," which "allowed the police to ascertain" her "identity." *United States v. Kehoe*, 893 F.3d 232, 239 (4th Cir. 2018); *see* Gov's Sealed Ex. A. at 1:58–2:18. The witness "also provided the basis of" her "knowledge:" her "presence at . . . the location of the alleged ongoing criminal activity." *Kehoe*, 893 F.3d at 239; *see* Def's Sealed Ex. A. at 0:21–0:24 ("we were just parked next to the car"). An

"eyewitness" report made "soon after" an "incident . . . has long been treated as especially reliable." *Navarette v. California*, 572 U.S. 393, 399 (2014). Thus, given the witness's "disclos[ure]" of "her identity and basis of knowledge," "the officers were entitled to rely on the information" she "provided." *Kehoe*, 893 F.3d at 238–39.

Turn to corroboration. While the non-anonymous witness's report did not require further corroboration, the officers here "confirmed important aspects of the tip." *Perkins*, 363 F.3d at 322–23. "The fact that" the officers "found" a truck matching the witness's "precise" description (down to the license plate number) at a lot off the Parkway "offers important corroboration of the tip." *See id.* at 322. To be sure, those details were not "predictive," but "other manners of corroborating a tip are entirely legitimate"—particularly "where the suspicious activity is openly and readily observable." *Id.* at 325. For instance, the presence of "two white males in a red car with a silver or white stripe at the precise duplex reported" corroborated a tip, even though the men were no longer engaged in the suspicious behavior reported. *Id.* at 322. Likewise, an officer's observation of a vehicle with the "make, model, color, and . . . dark tinted windows" identified by the tipster at the "address" the tipster provided sufficed for corroboration. *Torres v. Ball*, No. 21-6447, 2023 WL 2966035, at *7 (4th Cir. Apr. 17, 2023) (per curiam). The confirmation of similar details here validated the witness's

"reliability." *See id.*; *see, e.g.*, *United States v. Singh*, 363 F.3d 347, 355 (4th Cir. 2004) (verifying tip's reliability through vehicle's color, "Canadian plates," and the "gender and national origin" of its occupants).

Given the reliability of the witness's report, its content more than justified reasonable suspicion of an assault. To support reasonable suspicion, a tip need not be "certain[]." *See Cortez*, 449 U.S. at 418. Rather, conduct that is "ambiguous and susceptible of an innocent explanation" often will support reasonable suspicion. *See Wardlow*, 528 U.S. at 125. Thus, in *Griffin v. Wisconsin*, the Supreme Court held that an officer's tip that a probationer "'*might* have' guns in his residence, not that he certainly had them" sufficed for reasonable suspicion. 483 U.S. 868, 678–80 (1987) (emphasis added); *see also, e.g.*, *United States v. Midgette*, 478 F.3d 616, 625 (4th Cir. 2007) (tip that defendant "may be in possession of firearm" established reasonable suspicion).

Likewise, a report need only describe "suspicious" conduct—not "illegal" activity. *See, e.g.*, *Perkins*, 363 F.3d at 326. After all, "[i]n *Terry* itself," the defendants' "conduct—pacing back and forth and talking to each other outside of a store—was itself legal and perhaps susceptible of an innocent explanation." *Id.* at 327. Consequently, in *Perkins*, a "tip indicat[ing] that two men were pointing rifles in various directions" supported reasonable suspicion despite the reality that "it is not illegal to openly carry a firearm" in West Virginia. *Id.* By the same

token, this Court found reasonable suspicion to stop a "pickup truck" with "three persons inside" based solely on a report of "a vehicle at a paving company after hours and people with flashlights going back and forth from the vehicle"—conduct that is far from obviously illegal. *United States v. Beeson*, 611 F. App'x 773, 774–75 (4th Cir. 2015) (per curiam).

Romero Gonzalez, for his part, does not contest that reasonable suspicion requires neither certainty nor illegal conduct. *See* Def. Br. 23–29. Indeed, he concedes that in *Navarrete*, reasonable suspicion was present based on an (anonymous) tip reporting conduct that bore a "'great . . . resemblance to paradigmatic manifestations of drunk driving'" and "'was a significant indicator of drunk driving.'" Def. Br. 24 (quoting 572 U.S. at 403). Likewise, he acknowledges that a credible tip reporting "'suspicious' activity" supported reasonable suspicion in *Perkins*. Def. Br. 26 (citing 363 F.3d at 319–20). Further, he offers up hypotheticals where reasonable suspicion concededly would be present based on conduct merely "indicative of an illegal act"—such as "snorting powder from a vial" (even though it could be "powdered sugar"). Def. Br. 28.

Romero Gonzalez's concessions give the game away. The witness here reported "yelling," "screaming," and a man "hitting" and "pounding" so fiercely a Dodge truck "was jerking." Def's Sealed Ex. A at 0:12–0:56, Gov's Sealed Ex. A at 4:42–5:00. Moreover, the perpetrator displayed consciousness of guilt: When

15

the witness revealed her presence by turning on her car's lights, the perpetrator "immediately . . . stopped" and "started looking at" her. Def's Sealed Ex. A at 0:49–0:56. Then, consistent with a perpetrator's strong incentive for "flight" after being spotted committing an assault, *see Wardlow*, 528 U.S. at 124–25, the officers found the truck in a different lot off the parkway, JA84. Judged by Romero Gonzalez's own standard, screaming and blows so fierce they caused a pickup truck to jerk back and forth sufficed for reasonable suspicion because they were "'suspicious,'" Def. Br. 26 (citing *Perkins*, 363 F.3d at 319–20), bore a "'great . . . resemblance'" to assault, Def. Br. 24 (quoting *Navarette*, 572 U.S. at 403), and were "indicative of" it, Def. Br. 28.

Perhaps recognizing as much, Romero Gonzalez emphasizes the possibility the perpetrator was pummeling a car seat (as opposed to a person). Def. Br. 5, 15, 22. But, that suggestion fails to "construe the evidence in the light most favorable to the government," as required on appeal from the denial of a motion to suppress. *Perkins*, 363 F.3d at 320. In any event, just as in *Navarette*, *Perkins*, and Romero Gonzalez's own hypotheticals, his "attempts to second-guess the officer's reasonable suspicion . . . are unavailing" because "reasonable suspicion 'need not rule out the possibility of innocent conduct.'" *See* 572 U.S. at 403; 363 F.3d at 327 (discounting "speculati[on] on possible innocent reasons for a defendant's actions"); Def. Br. 28 (acknowledging possibility suspect "was snorting powdered

sugar" would not vitiate reasonable suspicion).

Romero Gonzalez notes that officers cannot rely on an "'outlandish, vague, or contradictory'" report.  Def. Br. 20 (quoting *United States v. Gondres-Medrano*, 3 F.4th 708, 717 (4th Cir. 2021)).  True enough.  But he identifies nothing outlandish or contradictory about the witness's report here.  And her description of screaming and violent blows, the perpetrator's gender, and the truck's identifying features—down to the license plate number—was anything but vague.

Romero Gonzalez also points out that "[n]o other witness reported seeing anything unusual, and no victim surfaced in the 30 minutes" after "the tipster's call."  Def. Br. 14, 23.  The "absence of additional suspicious conduct," however, does not "dispel . . . reasonable suspicion."  *Navarette*, 572 U.S. at 403; *see, e.g.*, *United States v. McCoy*, 513 F.3d 405, 412 (4th Cir. 2008) (rejecting focus on "what factual circumstances *did not* exist" rather than "what facts *did* exist").  Moreover, it is "hardly surprising" that neither additional witnesses nor a victim would emerge when an assault took place in a truck parked in a largely deserted lot during the dark of night.  *See Navarette*, 572 U.S. at 403.  The district court therefore did not err in finding that the witness's credible, corroborated report of screaming and violent blows furnished reasonable suspicion of an assault.

## B. The witness's report of a male perpetrator and Romero Gonzalez's presence in the truck established reasonable suspicion he was the perpetrator.

The court likewise did not err in finding that the witness's report of a male perpetrator and Romero Gonzalez's presence in the truck sufficed for reasonable suspicion he was the perpetrator of the assault. While reasonable suspicion must be "particularized," officers "may rely on probabilities" which "'fall[] considerably short' of 51% accuracy." *Glover*, 589 U.S. at 381, 384–85. Applying that standard, the Supreme Court found reasonable suspicion based on an officer's "commonsense inference that" the "registered owner with a revoked Kansas driver's license *might* be the one driving" a "vehicle." *Id.* at 381–83 (emphasis added). Similarly, this Court held that an officer could reasonably suspect an unidentified man who entered a vehicle matching the description provided by a tipster was the wanted suspect. *Torres*, 2023 WL 2966035, at *7–8.

The officers here similarly suspected that Romero Gonzalez "might be" the perpetrator. *Glover*, 589 U.S. at 383. The witness reported two or three occupants in the truck—one or two "people in the front" and a male perpetrator "in the back." *See* Def's Sealed Ex. A at 0:33–0:49; Gov's Sealed Ex. A at 4:42–5:00. The officers also knew that the hitting "immediately" stopped when the perpetrator learned he was being observed, Def's Sealed Ex. A at 0:49–0:56, and that the truck then fled the scene and drove to a new lot (presumably with the perpetrator doing

the driving), *see* JA83–84. Finally, the officers could see a man in the driver's seat of the truck but did not know whether a victim was present and unconscious or restrained "in the back of the vehicle." *See* JA128; Gov's Ex. 14 at 0:40–1:16; Def's Sealed Ex. C at 0:31–0:53. By process of elimination, and based on the witness's report of a male perpetrator, the officers reasonably suspected the man was the culprit. Even if that probability fell "'short' of 51%," *Glover*, 589 U.S. at 381, those "facts" supported "a temporary, limited detention of Mr. Romero Gonzalez to investigate the information that the 911 caller had provided," JA69.

Romero Gonzalez makes much of the witness's report that a "passenger" in the back seat of the truck was doing the hitting, suggesting that because he was found in the driver's seat, he could not have been the perpetrator. *See* Def. Br. 27–29. But when the officers approached the truck, the arrangement of occupants had obviously changed. While the officers did not know whether a victim was present, Romero Gonzalez appeared alone. Regardless of where the perpetrator had been 30 minutes before, it would hardly be surprising that the perpetrator (and apparently sole occupant of the truck) would be sitting in the driver's seat. Particularly so given the reasonable inference that the perpetrator shifted to the driver's seat to "flee" the scene and restrain or dispose of the victim after being spotted by the witness. *See Wardlow*, 528 U.S. at 124–25; *cf. United States v. Gordon*, No. 22-4282, 2023 WL 2446674, at *2 (4th Cir. Mar. 10, 2023) (per

curiam) (upholding "'inference that the car had arrived as a result of the individual who was in the driver's seat' because [the officer] had recently patrolled the area and did not see the car").

In any event, this Court's precedents on small-group seizures permitted officers to seize *everyone* in the truck regardless of how many remained. Contrary to Romero Gonzalez's claim that reasonable suspicion must invariably be particularized to a "*specific person*," Def. Br. 25, officers often possess "reasonable suspicion to detain all of the members of [a] group," *United States v. Hernandez-Mendez*, 626 F.3d 203, 211 (4th Cir. 2010), or "all occupants of [a] vehicle," *United States v. Sakyi*, 160 F.3d 164, 169 (4th Cir. 1998). This Court therefore has permitted officers to "frisk" everyone in a "vehicle" based on "reasonable suspicion" it contained "illegal drugs," *id.*, to stop and search both occupants of a car based on reasonable suspicion "one of the two" was a dangerous gang member, *United States v. Holmes*, 376 F.3d 270, 277–78 (4th Cir. 2004), and to "stop and patdown" a group of "three" based on reasonable suspicion "at least one member of the group was armed and dangerous," *United States v. Phillips*, 175 F.3d 1017, 1999 WL 155941, at *2 (4th Cir. 1999) (per curiam).

Those cases make clear that when officers reasonably suspect at least one member of a small group of criminality, the officers may seize everyone in the group to investigate. Here, the witness reported that there were two or three people

in the truck.  *See* Def's Sealed Ex. A at 0:33–0:49.  Thus, even absent the specific

facts indicating that Romero Gonzalez was the perpetrator, the officers could have

seized everyone in the truck (whether one, two, or three remained) to investigate

which was the perpetrator.  *See Phillips*, 1999 WL 155941, at *2 ("The fact that

there were now three men in the group, while only two men had been involved in

the shooting, does not make the stop and patdown of all three men unreasonable.").

Romero Gonzalez's cases fail to undercut the court's finding of

particularized suspicion.  Both *United States v. Massenburg* and *Whatley v. Scobie*

involved unreliable, "anonymous tip[s]" and a "poor match between the vague tip

and the individuals encountered."  654 F.3d 480, 487–88 (4th Cir. 2011); No. 3:06-

cv-628, 2007 WL 9735597, at *4 (D.S.C. June 14, 2007).  In *Massenburg*, the

"only link between" the anonymous "tip that shots had just been fired" and the

defendant's "group was the group's rough proximity to the alleged site of the

gunfire."  654 F.3d at 482–83, 487.  In *Whatley*—an egregious § 1983 case—

officers responded to an anonymous tip reporting "a black male and female" by

seizing the first African-American couple they came across in a "predominantly

. . . African-American neighborhood."  2007 WL 9735597, at *2, *4.  Here, by

contrast, the witness was not anonymous and the identifying information—the

perpetrator's gender and the truck's color, make, state of registration, and license

plate number—was anything but vague.  *See Torres*, 2023 WL 2966035, at *7–8

(holding that informant's description of vehicle and provision of address sufficed for reasonable suspicion).

*United States v. Drakeford* is even less helpful to Romero Gonzalez. 992 F.3d 255 (4th Cir. 2021). There, officers *succeeded* in identifying a suspect through "vehicle tags" provided by an informant. *Id.* at 258. The issue was not whether the report sufficiently identified the suspect, but whether the officers had reasonable suspicion the identified suspect was engaged in drug dealing. *Id.* at 263. This Court concluded that the officers lacked reasonable suspicion because they "never observed suspicious behavior or drug transactions" "despite surveilling Appellant over the course of several months." *Id.* at 265.

Finally, *Perkins* only confirms that the officers here possessed particularized suspicion. 363 F.3d at 319–20. There, to repeat, this Court found a witness's description of "two white males in a red car with a silver or white stripe" sufficiently particularized. *Id.* at 322. Here, the witness's report of a male perpetrator in a grey Dodge truck with a specific Virginia license plate was at least as precise as the description there.

Turning from caselaw to the record, Romero Gonzalez incorrectly asserts that the "court found that officers were aware Mr. Romero Gonzalez was alone *at the time* he was seized." Def. Br. 7 (citing JA69); *see also* Def. Br. 17. Without citation, he further claims that "the Government has never disputed the officers'

awareness that Mr. Romero Gonzalez was alone." Def. Br. 7–8; *see also* Def. Br. 17. That is wrong multiple times over. *First*, particularly when viewed "in the light most favorable to the government," *Perkins*, 363 F.3d at 320, the record is clear that the officers were not "sure of the situation" and did not know whether there was a "secondary party" present when they approached the truck, *see* JA128. As Romero Gonzalez acknowledges, they "immediately" asked "whether he 'ha[d] anybody else in the car with [him].'" Def. Br. 8. They also shone their flashlights "in the backseat" of the truck, Def. Br. 8, to ascertain whether a victim was "in the back of the vehicle," JA128; *see* Gov's Ex. 14 at 0:48–1:12; Def's Sealed Ex. C at 0:37–0:49. The officers even asked each other whether there was anybody else in the truck. Gov's Ex. 14 at 0:52–0:56, 1:12–1:16; Def's Sealed Ex. C at 0:31–0:35, 0:49–0:53.

*Second*, the court never found the officers knew Romero Gonzalez was alone. Instead, it found only that he *was* alone, not that they *knew* he was alone. *See* Def. Br. 7 ("'Romero Gonzalez was found in the car alone'" (quoting JA69)). And what matters in assessing the legality of the detention is "whether the facts known to" the officers "at the time of the stop gave rise to reasonable suspicion." *Glover*, 589 U.S. at 381.

*Third*, rather than conceding that the officers knew Romero Gonzalez was alone, the government explained that the "officers could not clearly see if there

were any other occupants of the defendant's vehicle when they approached." JA33–34. The government further explained that the officers immediately asked "whether there was anyone else in the car with him" because they could not easily "see inside the backseat of the truck when the window was up." JA25 & n.1, JA218 & n.1. All considered, the officers did not know whether a victim was present when they pulled behind Romero Gonzalez's truck.[2]

Throughout his brief, Romero Gonzalez purports that rather than pulling behind his truck the officers should have initiated "consensual" questioning. *See* Def. Br. 2, 4, 18, 30–31. Doing so, he claims, would have been "simple." Def. Br. 30. But "[o]nce reasonable suspicion . . . arises, '[t]he reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques.'" *Navarette*, 572 U.S. at 404. "This would be a particularly inappropriate context to depart from that settled rule, because allowing" someone suspected of a violent assault "a second chance for dangerous

---

[2] Romero Gonzalez also incorrectly asserts (without citation) that the officers only "developed a suspicion [he] might be intoxicated" "five minutes into the detention." Def. Br. 9. Wrong again. One officer testified that Romero Gonzalez "appeared to be impaired" and reeked of alcohol "[w]hen we first started talking to him." JA90. Another testified that while his "main concern was whether" Romero Gonzalez "was in a fight," the officer immediately "smelled the odor of alcohol emanating from his breath." JA121. A third officer, who arrived at the scene slightly after the others, testified that upon "initiating contact with the defendant . . . I immediately recognized possible substance inebriation." JA128.

conduct could have disastrous consequences." *See id.*; *United States v. Bumpers*, 705 F.3d 168, 177 (4th Cir. 2013) (rejecting suggestion officers initiate "voluntary police-citizen encounters" as "overlook[ing] reality"). Indeed, Romero Gonzalez acknowledges that failing to pull behind his truck would have risked him driving "away." Def. Br. 30. Hence, while irrelevant to the reasonable suspicion inquiry, it was eminently reasonable for the officers to pull in behind someone suspected of a violent assault and seated in a still-running truck to prevent him from using the truck to harm officers or escape. *See* JA127 (explaining that allowing a suspect to "operat[e] or control" a "vehicle" contravened officer's "training and experience"); *cf. Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (noting potentially "deadly threat" posed by vehicular flight).

All told, pulling in behind Romero Gonzalez "was neither 'the product of a volatile or inventive imagination' nor 'undertaken simply as an act of harassment,' but was instead 'the tempered act of'" officers who "'had to make a quick decision as to how to protect'" themselves "'and others from possible danger, and took limited steps to do so.'" *United States v. Glover*, 662 F.3d 694, 700 (4th Cir. 2011) (quoting *Terry*, 392 U.S. at 28). As the court found, the officers did exactly "what they were supposed to do" and acted "reasonabl[y]" and "appropriate[ly]" to "determine whether or not an assault had occurred" and "whether or not there was somebody who needed police or medical assistance." JA69.

**Conclusion**

The Court should affirm the judgment of the district court.

Respectfully submitted,

Erik S. Siebert
United States Attorney


_____/s/_____
James Reed Sawyers
Assistant United States Attorney

## Statement Regarding Oral Argument

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 2016.

I further certify that this brief does not exceed 13,000 words (and is specifically 6,203 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, this certificate, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

_____/s/_____

James Reed Sawyers
Assistant United States Attorney