No. 24-4639

IN THE

# United States Court of Appeals
# for the Fourth Circuit

UNITED STATES,

*Plaintiff-Appellee,*

– v. –

JORGE ROMERO GONZALEZ

*Defendant-Appellant.*

On Appeal From the United States District Court for the
Eastern District of Virginia, Alexandria Division, Hon. Claude M. Hilton

## REPLY BRIEF OF APPELLANT-
## JORGE ROMERO GONZALEZ

Timothy H. Gray
Pro Bono Counsel
KATTEN MUCHIN ROSENMAN LLP
1919 Pennsylvania Ave., NW
Suite 800
Washington, DC 20006
Tel: (202) 625-3500
timothy.gray@katten.com

Cadence Mertz
Patrick Bryant
Assistant Federal Public Defenders
Office of the Federal Public
Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Tel: (703) 600-0800
cadence_mertz@fd.org
patrick_bryant@fd.org

*Counsel for Appellant Jorge Romero Gonzalez*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ................................................................................................. 1

ARGUMENT ......................................................................................................... 2

    I.     "Exigency" Is Not at Issue Here; "Reasonable Suspicion" Is. ............................................................................................................ 2

    II.    The Circumstances Here—a Sketchy Report of Conduct Combined with Unindividualized Suspicion—Require Reversal. .......................................................................................... 3

        A.    The Tip's Report of Possible Assaultive Conduct in the Truck Was Unreliable. ................................................ 4

        B.    There Was No Reasonable Suspicion Particularized to the Driver of the Truck, Mr. Romero Gonzalez. ............ 8

            1.    The Government Cannot Articulate a Reasonable Objective Basis for Suspecting the *Driver* of a Crime. .......................................... 9

            2.    Officers Were Not Entitled to "Seize Everyone in the Truck." .............................................. 13

CONCLUSION ................................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Griffin v. Wisconsin,*
    483 U.S. 868 (1987)........................................................................4, 5

*Illinois v. Wardlow,*
    528 U.S. 119 (2000)..........................................................................11

*Kansas v. Glover,*
    589 U.S. 376 (2020).................................................................9, 10, 12

*Navarette v. California,*
    572 U.S. 393 (2014).................................................................6, 7, 10

*United States v. Beeson,*
    611 F. App'x 773 (4th Cir. 2015) ....................................................6

*United States v. Critchfield,*
    81 F.4th 390 (4th Cir. 2023)............................................................3

*United States v. Curry,*
    965 F.3d 313 (4th Cir. 2020) ...........................................................3

*United States v. Feliciana,*
    974 F.3d 519 (4th Cir. 2020)..........................................................12

*United States v. Glover,*
    662 F.3d 694 (4th Cir. 2011)..........................................................16

*United States v. Hernandez-Mendez,*
    626 F.3d 203 (4th Cir. 2010)..........................................................14

*United States v. Holmes,*
    376 F.3d 270 (4th Cir. 2004)....................................................14, 15

*United States v. Massenburg,*
    654 F.3d 480 (4th Cir. 2011)......................................................3, 12

*United States v. Midgette,*
   478 F.3d 616 (4th Cir. 2007)...................................................................5

*United States v. Perkins,*
   363 F.3d 317 (4th Cir. 2004)................................................................5, 6

*United States v. Phillips,*
   175 F.3d 1017, 1999 WL 155941 (4th Cir. 1999) ...........................14

*United States v. Robinson,*
   846 F.3d 694 (4th Cir. 2017) ................................................................15

*United States v. Sakyi,*
   160 F.3d 164 (4th Cir. 1998).........................................................14, 15

*United States v. Snuggs,*
   No. 23-4430, 2024 WL 4501085 (4th Cir. Oct. 16, 2024)................4

**INTRODUCTION**

Based on a tip that a passenger in the backseat of a parked truck was making motions that might (or might not) have been "swatting" or "pounding" and that might (or might not) have been directed toward a person in the front seat of the truck, the U.S. Park Police immediately seized Defendant-Appellant Jorge Romero Gonzalez when he was found alone in the front seat of the same truck parked a mile away and half an hour later. The question on appeal is whether, given the nature of the tip they received and the situation they encountered, officers had "reasonable suspicion" to do so. They did not.

The combination of circumstances here—vague tip; unparticularized suspicion—compel reversal. Indeed, the Government's Brief ("Gov't Br.") is unable to cite a single case recognizing "reasonable suspicion" on facts analogous to these. Instead, it invokes inapposite cases involving narrow rules or specific doctrines (which do not apply here) and where groups themselves were suspected of wrongdoing (which, as the Government concedes, was not the case here). To compensate for the holes in its logic, the Government pervasively suggests—but never outright argues—that exigent circumstances here should somehow lessen the required "reasonableness"

of suspecting *Mr. Romero Gonzalez*, individually, of a crime. That is not the law.

At bottom, the Fourth Amendment asks whether it was *objectively reasonable* to suspect the *particular person seized* of a crime. Here, that means whether it was objectively reasonable to seize Mr. Romero Gonzalez, *alone* in the driver's seat, at the *instant* he was encountered. The Government's position reduces to the proposition that it is reasonable to suspect that (a) the conduct reported was an actual crime **and** (b) the *driver* of the truck was the reported backseat *passenger* (the "male perpetrator" of the non-crime, in the Government's new parlance) a mile away and half an hour later. It was not.

## ARGUMENT

### I. "Exigency" Is Not at Issue Here; "Reasonable Suspicion" Is.

As an initial matter, the Government seeks to introduce through the back door an argument—that the prospect of a "victim" somehow watered down the "reasonable suspicion" requirement—that it never raised below and that would not apply to these circumstances in any event. It repeatedly stresses "the situation's exigency," Gov't Br. 4, by pointing to officers' testimony that they intended to check "whether a victim was present but unconscious or restrained." *Id.* at 4-5; *see, e.g.*, *id.* at 9, 19, 23, 24. The question

here, however, is whether the Government had "reasonable suspicion" to seize the *driver*, Mr. Romero Gonzalez, at the moment they encountered the truck in which he was evidently alone. While "exigent circumstances" may relieve law enforcement of the need for objective, articulable, individualized reasonable suspicion in extraordinarily narrow circumstances, the Government never invoked that theory here, nor could it. *See* Opening Br. 28 n.4.

The Government nonetheless pervasively highlights the issue of "exigency" to bolster its preferred approach—attaching "reasonable suspicion" to a *vehicle*, as opposed to the specific person spotted and seized *inside it*. That is not the law. *See United States v. Critchfield*, 81 F.4th 390, 393 (4th Cir. 2023); *United States v. Massenburg,* 654 F.3d 480, 486 (4th Cir. 2011); *see also United States v. Curry*, 965 F.3d 313, 326 (4th Cir. 2020).

## II.    The Circumstances Here—a Sketchy Report of Conduct Combined with Unindividualized Suspicion—Require Reversal.

The Government argues that the tip itself was sufficiently reliable and that, under the circumstances, it sufficed to provide a "reasonable suspicion" that Mr. Romero Gonzalez, specifically, committed a crime. Its arguments in both respects, however, rely on authorities that serve only to illustrate that

reasonable suspicion was lacking here, and their argument leans heavily on unreasonable presumptions and hypotheticals divorced from the objective facts of this case.

**A.    T**he Tip's Report of Possible Assaultive Conduct in the Truck Was Unreliable.

First, the Government insists that the tip the officers received was a sufficiently "reliable" report of "suspicious conduct" to give rise to reasonable suspicion. The cases it cites, however, are either inapposite or unhelpful to its position. For example, the Government asserts that *Griffin v. Wisconsin* "held that an officer's tip that a probationer '"might have" guns in his residence, not that he certainly had them' sufficed for reasonable suspicion." Gov't Br. 14 (quoting 483 U.S. 868, 878 (1987)). "Might have" or "might" thus crop up throughout the Government's brief.

But *Griffin* was a case about the (inapplicable) "special needs" exception, grounded in the special needs of probation. *Griffin*, 483 U.S. at 873-74. "[T]he very assumption of the institution of probation" is "the probationer is in need of rehabilitation and is more likely than the ordinary citizen to violate the law," so a vague "might have" tip sufficed under the state's probation regulations. *Id.* at 880; *see also United States v. Snuggs,* No.

23-4430, 2024 WL 4501085, at *2 (4th Cir. Oct. 16, 2024) ("courts do not have to analyze [the] constitutionality of search[es] under [a] Fourth Amendment balancing test" where they satisfy "exception established in *Griffin*").

The Government also cites *United States v. Midgette* to suggest that a tip that a felon "may be in possession of firearm" could establish reasonable suspicion. Gov't Br. 14 (citing 478 F.3d 616, 619 (4th Cir. 2007)).[1] But again, the tipster in that case gave objective reasons for that suspicion, particularized to the defendant: "he was familiar with" the defendant; the defendant "had a reputation for carrying firearms"; and the defendant "had personally retrieved some firearms from his police station." 478 F.3d at 625.

The Fourth Amendment requires that a tip—anonymous or not—describe "clearly suspicious activity" when it provides "part of the basis for reasonable suspicion." *United States v. Perkins*, 363 F.3d 317, 322 (4th Cir. 2004). But the "suspicious" conduct the tipster reported in this case was the *sole basis* for the seizure, *cf. id.* at 323 (tip was "not the sole basis for the *Terry*

---

[1] *Midgette* states that the Supreme Court in *Griffin* "noted that a tip…'there were or might be guns in [the probationer's] apartment' provided . . . reasonable suspicion," 478 F.3d at 619, but at-best ambiguous dicta in *Griffin* is hardly a holding that a bare "there-might-be-something"-style tip would suffice to justify a seizure outside the probationary context.

stop"), and the purported corroboration pertained *solely* to the vehicle. That matters, and it is telling that the Government cannot locate any cases with comparable facts. In *Perkins*, for example, reasonable suspicion arose from critical context—the high crime of the neighborhood; prior arrests at a known drug house where the individuals were spotted; and the fact that one of the individuals was a well-known drug purchaser. *Id.* at 321. The tipster there, moreover, provided specific descriptions of individuals; here, the tipster offered no individualized information at all.

Similarly, *United States v. Beeson,* is nothing like this case. Gov't Br. 15 (citing 611 F. App'x 773 (4th Cir. 2015)). It involved a report of *multiple* people engaged in "suspicious activity" (wandering around with flashlights at a closed business) near a parked truck; an investigatory stop was deemed reasonable when officers arrived *three minutes later* to find the *same truck* leaving the location with *three people inside*. *Beeson*, 611 F. App'x at 774. Here, the report described three people in a parked truck; one of them, in the backseat, was engaged in conduct potentially consistent with assault; and half an hour later officers came upon a single person in the front seat at a completely different location.

Finally, the Government unpersuasively relies on *Navarette v. California* to urge affirmance. Gov't Br. 15-16 (citing 572 U.S. 393, 399 (2014)). But *Navarette* involved an unambiguous account of the tipster's firsthand experience of "a specific and dangerous result of [a] driver's conduct: running another car off the highway." *Navarette*, 527 U.S. at 399, 403 (emphasis added). No hedging; no uncertainty. It was a "close case," *id.* at 404, when a tipster made a *certain* report of *clearly observed* conduct by the *driver* of a truck. Here, there was an uncertain report of a passenger's conduct, which the tipster couldn't clearly see.

The Government's position has troubling implications. Sure, the tipster here provided her first name and a callback number. But if it is enough to provide a sketchy report of what *appear to be* hitting motions by a person who cannot be described, *possibly directed* toward another person who also cannot be described, then an irate motorist or prankster can get *any* person (or persons) in a car seized. Providing basic contact information is little protection in circumstances like this because the fact that the report is extensively hedged provides built-in plausible deniability. It is a permission slip for lower-impact SWATting.

Justice Scalia warned of precisely this prospect in *Navarette*. *See* 572 U.S. at 414 (Scalia, J., dissenting) ("[T]he caller need fear no consequences, even if 911 knows his identity. After all, he never alleged drunkenness, but merely called in a traffic violation . . . ."). In that admittedly "close case," the conduct *of the driver* in *actually driving the car* was at issue. The constitutional concerns are even more starkly presented in a case like this one. According to the Government, a sketchy report about ambiguous conduct in a stationary vehicle is grounds to seize *anyone* in that vehicle half an hour later at a different location. As discussed below, the Government is wrong.

### B. There Was No Reasonable Suspicion Particularized to the Driver of the Truck, Mr. Romero Gonzalez.

Even assuming the hedged and uncertain report of "hitting" or "swatting" motions and yelling might serve as sole justification for a temporary detention under other circumstances, it did not in this case.[2] The

---

[2] The Government casts the tipster's report of "swatting" or "hitting" motions, about which she repeatedly professed uncertainty, as "brutal blows." Gov't Br. 12. Indeed, it asserts that the tipster "report[ed]" "brutal blows. *Id.* Compare this to the actual report: "There was a passenger, he was—I don't know how you would call the motion, but just swatting his hand at the back . . . ." J.A. 255 (Government's sealed exhibit A to Response in Opposition to Motion to Suppress (911 Call Recording)) at 4:43. The Government evokes an image of a knock-down, drag-out assault in the truck's cabin. At the same time, it acknowledges that the conduct stopped when the tipster turned on her headlights. Gov't Br. 9, 15. If everything

Government fails to defend the lower courts' conclusion that the officers had reasonable *particularized* suspicion of Mr. Romero Gonzales—the driver of the truck—sufficient to justify immediately seizing him.

1. **The Government Cannot Articulate a Reasonable Objective Basis for Suspecting the *Driver* of a Crime.**

The Government relies on *Kansas v. Glover*, 589 U.S. 376 (2020), as the touchstone of its analysis. *See* Gov't Br. 10-11, 18-19, 23. *Glover*, however, exposes just how wispy its attempts are to reconcile the officers' immediate seizure here with what the Fourth Amendment requires. That case involved a traffic stop of a vehicle whose owner (as the officer already knew) had a revoked license. *Glover*, 589 U.S. at 381. The question was whether it was reasonable to infer that the person driving a truck was the registered owner of that truck. *Id.* Given the statistical likelihood that a vehicle is being driven by its owner and the nature of the offenses justifying revocation in the first place, it was a "commonsense inference" that "a registered owner with a revoked . . . driver's license might be the one driving the vehicle." *Id.*

---

indeed stopped, what the tipster said suggests less "consciousness of guilt," *id.* at 9, and more that the situation did not actually involve a sustained campaign of "brutal blows," *id.* at 12, at all.

The Government tries to extend that logic to this case, noting that the officers "similarly suspected that Romero Gonzalez 'might be' the perpetrator." Gov't Br. 18. But there is nothing "similar" about it. The Government would have this Court recognize as *equally reasonable* an inference that a person encountered alone in the driver's seat of a parked car is the same person observed in the back seat of that car half an hour before and a mile away. The Government cannot articulate a reasonable basis for that suspicion.

Again, the Government concedes that the tipster's report identified a person in the *back seat* as doing the "hitting." This is the Government's "perpetrator." Gov't Br. 18. But it states the officers knew "the truck…fled the scene and drove to a new lot (*presumably with the perpetrator doing the driving*)." *Id.* at 18-19 (emphasis added). No "presumption" is mentioned or invoked in the cited pages of the trial transcript, and the Government does not suggest anything reasonable to justify one. It would depend on first presuming that there *was* an assault based on the tipster's hedged report, then presuming that the backseat perpetrator has become the one doing the driving (the other passenger having apparently vanished). The Government perfunctorily suggests that there might be a "reasonable inference that the

perpetrator shifted to the driver's seat to 'flee' the scene and restrain or dispose of the victim after being spotted by the witness." *Id.* at 19. But this is guesswork and storytelling—a "hunch," *Navarette*, 572 U.S. at 397, not an inference from base-rate probabilities and "database information," *Glover*, 589 U.S. at 381, or officers witnessing someone flee from them, *cf. Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

The Government's central contention is this: "By process of elimination, and based on the witness's report of a male perpetrator, the officers reasonably suspected the man was the culprit." Gov't Br. 19. What process of elimination? The tipster did not provide the sexes of any other person in the car. Indeed, the tipster was unable to provide any physical description of *any* of them, beyond the use of a masculine pronoun ("he")— a thin reed the Government has necessarily made central to its case on appeal. The only "elimination" was the subtraction of two people of *unreported* sex who the tipster had reported seeing in the car—one in front and one (the person doing the "hitting" or "swatting") in back—between the time of the tip and the time the Government seized Mr. Romero Gonzalez.

The Government submits it "would hardly be surprising that the perpetrator . . . would be sitting in the driver's seat," Gov't Br. 19-20, citing

*Wardlow*, 528 U.S. 119, for the proposition that "perpetrators" are inclined to "flee." Gov't Br. 19. But *Wardlow* involved an officer's "deci[sion] to investigate [the defendant] after observing him flee," 528 U.S. at 124, not a hypothetical inference from a hypothetical act of fleeing following a hypothetical hasty reconfiguration of the truck's occupants that might have happened after the tipster turned on her lights.[3]

This *post hoc* chain of presumptions and suppositions is a far cry from the "commonsense inference" the Government invokes that "a registered owner with a revoked . . . driver's license might be the one driving [a] vehicle." *Glover*, 589 U.S. at 381; *cf. Massenburg*, 654 F.3d at 487 ("poor match between [a] vague tip and the individuals encountered substantially undermines reliance on the tip for reasonable *particularized* suspicion" of any one person). Here, officers could not and did not "articulate [a]

---

[3] It is not clear, moreover, why a "perpetrator's" desire to "flee" would suggest that the perpetrator was the *only* person (of three reported) who actually *stayed* in the truck for at least another half-hour.

particularized and objective basis for suspecting illegality" on the part of the driver. *United States v. Feliciana*, 974 F.3d 519, 524 (4th Cir. 2020).[4]

This is where the Government's overemphasis on the word "might" and repeated references to a possible "victim" come in. These devices appear intended to paper over "the evidentiary gap," *id.* at 524—to obscure the obvious fact that finding a person alone in the driver's seat of the parked truck should have *dissipated*, not *heightened*, any suspicion that the person encountered had committed a possible "assault" the tipster could not even say she had witnessed. The magistrate judge concluded otherwise, alluding to the same aura of exigency arising from the nature of the crime supposedly afoot. *See* J.A. 68-69. That was error.

Forced now to articulate how an officer could *reasonably* conclude the backseat-passenger "assailant" was the person sitting calmly behind the wheel of the parked truck a mile away and half an hour later, the Government seizes upon the word "he" and contrives "presumptions" and "inferences" that none of the officers even testified they drew or would have

---

[4] Notably, *Feliciana* involved a Fourth-Amendment-violating traffic stop performed by the same U.S. Park Police officer who pulled his cruiser in behind Mr. Romero Gonzalez in this case.

drawn. The alternative is to acknowledge the obvious: the officers simply went in a little too hot for what the circumstances warranted, and they crossed the line.

### 2. Officers Were Not Entitled to "Seize Everyone in the Truck."

But none of these strained efforts to put the "perpetrator" in the driver's seat actually matter, the Government says, because the Park Police were entitled to peremptorily "seize everyone in the truck regardless of how many remained." Gov't Br. 19. None of the cases it cites for this startling proposition are remotely on point, and none purport to contravene the black-letter rule that suspicion must attach *to individuals*, not vehicles, to justify an investigatory detention.

For example, it may indeed be reasonable to detain "all members of [a] group" when (1) that group is a high school gang of which the officer has extensive personal knowledge, (2) it is the day after a "gang-related stabbing," and (3) there was "reasonable suspicion" based on first-hand observations "that *the group* was involved in (or was about to become involved in) . . . retaliat[ion] against rival gang members." *United States v. Hernandez-Mendez*, 626 F.3d 203, 210 (4th Cir. 2010) (emphasis added). But

that is obviously not this case. Similarly, in *United States v. Phillips*, 175 F.3d 1017, 1999 WL 155941 (4th Cir. 1999) (per curiam), where a witness "spontaneously identified *a group of people* who had just left Applebee's *as the perpetrators* of the shooting," *id.* at *2 (emphasis added), it was reasonable to detain a group because the group itself was suspected of a crime. Here, as the Government acknowledges, there was a single backseat "perpetrator."

Nor do *United States v. Sakyi,* 160 F.3d 164 (4th Cir. 1998), or *United States v. Holmes*, 376 F.3d 270 (4th Cir. 2004), support the Government's contention that the Park Police were entitled to immediately seize every occupant of the parked truck. *Sakyi* concerns the very specific context of drugs in a vehicle during a traffic stop. As this Court explained, "when drugs are suspected in a vehicle and suspicion is not readily attributable to any particular person in the vehicle, it is reasonable to conclude that all occupants of the vehicle are suspect" because "[t]hey are in the restricted space of the vehicle presumably by choice and presumably on a common mission." *Sakyi*, 160 F.3d at 169. The "nexus between drugs and guns presumptively creates a reasonable suspicion of danger to the officer" justifying pat-downs of all occupants. *Id.* No such rule applies to detentions based on hedged tips of a single person hitting and yelling inside a car.

Similarly, *Holmes* was a case about whether "officers had reasonable suspicion that [suspects] were dangerous and could gain immediate control of a weapon." 376 F.3d at 276-78. This, too, is a different doctrine applied to radically different facts, namely a pat-down *after* a suspect is detained. *Cf. United States v. Robinson*, 846 F.3d 694, 698 (4th Cir. 2017) (en banc) (argument improperly "collapse[d] the requirements for making a stop with the requirements for conducting a frisk"). *Holmes* makes clear that the temporary detention in that case—a traffic stop, not a seizure of a person in a parked car—came after there was a reliable, verified tip that specific gang members (dubbed "Six" and "Troop") for whom arrest warrants had been issued were at a specific location and would be traveling in a specific vehicle, followed by first-hand observations reasonably suggesting *both* "Six" *and* "Troop" were in the vehicle. *See id.* at 272-73.

The Government's proposed rule—that "when officers reasonably suspect at least one member of a small group of criminality, the officers may seize everyone in the group to investigate," Gov't Br. 20-21—just does not follow from these four cases. Nor does the Government even attempt to argue how its rule could apply to a member of a "small group" when that group has *lost* "members," as was the case here, while still comporting with

the Fourth Amendment. None of these cases suggest that, on these facts, anything less than reasonable suspicion particularized to the driver, Mr. Romero Gonzalez, could suffice to justify immediately surrounding his truck and blocking his exit.

The Government's appeals to exigency notwithstanding, this is not a case about a stop-and-frisk of an individual observed acting suspiciously in a high-crime area, where such a "tempered act" is justified to deter "the imminent outbreak of armed violence." *United States v. Glover*, 662 F.3d 694, 697 (4th Cir. 2011) (cited at Br. 25). Mr. Romero Gonzalez was sitting alone in the driver's seat of the truck half an hour after an uncertain tipster's uncertain report describing something that someone in the back was doing. Common sense suggests that the officers simply went too far when they blocked him in, and the Government's attempt to manufacture reasonable suspicion particularized to Mr. Romero Gonzalez falls flat. Accordingly, the abrupt, unreasoned seizure violated his Fourth Amendment rights.

## CONCLUSION

Jorge Romero Gonzalez respectfully requests that the Court reverse the denial of his motion to suppress and vacate the finding of guilt and sentence.

June 16, 2025

|                                        | /s/ *Patrick Bryant* |
|----------------------------------------|-----------------------------|
| Timothy H. Gray                        | Cadence Mertz |
| Pro Bono Counsel                       | Patrick Bryant |
| KATTEN MUCHIN ROSENMAN LLP             | Assistant Federal Public Defenders |
| 1919 Pennsylvania Ave., NW             | Office of the Federal Public |
| Suite 800                              | Defender |
| Washington, DC 20006                   | 1650 King Street, Suite 500 |
| Tel: (202) 625-3500                    | Alexandria, Virginia 22314 |
| timothy.gray@katten.com                | Tel: (703) 600-0800 |
|                                        | cadence_mertz@fd.org |
|                                        | patrick_bryant@fd.org |

*Counsel for Appellant Jorge Romero Gonzalez*

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that this brief is in compliance with the type form and volume requirements. Specifically, this Brief is proportionately spaced; uses a Roman-style, serif typeface (Book Antiqua) of 14-point; and contains 3,371 words, exclusive of the material not counted under Rule 32(f) of the Federal Rule of Appellate Procedure.

/s/ *Patrick Bryant*
Patrick Bryant
*Counsel for Appellant*